**Gerald Taylor, Administrator of the Estate of Theodore E. Taylor, Deceased, Defendant in Error, v. William W. Wheelock and William G. Bierd, Receivers of the Chicago & Alton Railroad Company, Plaintiffs in Error.**

**Gen. No. 8,132.**

Opinion filed January 25, 1928.

WILLIAM L. PATTON and SILAS H. STRAWN, for plaintiffs in error.

W. ST. J. WINES, for defendant in error.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Defendant in error, Gerald Taylor, administrator of the estate of Theodore E. Taylor, deceased, in an action on the case, recovered a judgment for the sum of $10,000 against William W. Wheelock and William G. Bierd, as receivers of the Chicago & Alton Railroad Company, to reverse which this writ of error was sued out. Hereafter in this opinion the defendant in error will be designated as plaintiff and the plaintiffs in error will be designated as defendants.

The death of the deceased resulted from a collision between an automobile driven by himself and a train of cars operated by defendants, at about 7:45 o'clock p. m., April 17, 1926, at the intersection of Third and Allen streets in the city of Springfield. The cause was submitted to the jury upon three counts, in the first of which it is averred, in substance, that the deceased was driving an automobile, with due care and caution, west on Allen street towards the railroad and that the defendants so carelessly drove the train that by and through their said carelessness and negligence in that behalf, the engine and train were brought into violent collision with the automobile, whereby plaintiff's intestate was killed.

The second count avers that the railroad ran on Third street and crossed Allen street and that both streets and the surrounding territory were closely built up and thickly populated; that the Allen street crossing was much used and that defendants did not maintain a flagman at said intersection between the hours of 6:00 o'clock p. m., and 7:00 o'clock a. m., nor any signal device of any kind to warn persons about to cross said railroad tracks of approaching trains, nor any sign of any kind or character to inform such persons of the presence of railroad tracks on said Third street; that certain buildings, a tree and a telephone pole served to obstruct the view of persons traveling west on Allen street towards the railroad tracks of any trains approaching the intersection from the south, so that persons traveling west on said Allen street towards said railroad tracks were peculiarly and extraordinarily exposed to danger unless trains approaching thereon from the south were driven and operated with especial care and caution and at a low and moderate speed, all of which facts were then and there known to said defendants; that plaintiff's intestate was driving an automobile west on Allen street and that the defendants with knowledge of the above-mentioned conditions wilfully and wantonly ran said locomotive engine at a high rate of speed, to wit, 40 miles an hour, with intentional disregard of their duty in that behalf and with a disregard of the consequences to persons lawfully using the intersection of said Allen street and said Third street, and with a willingness to inflict injury upon such user of said intersection, of Allen street and Third street, whereby the said locomotive engine and train were brought into violent collision with the said automobile, whereby plaintiff's intestate was killed, and that the defendants were conscious that their conduct would naturally and probably result in injury to persons crossing said railroad tracks.

The fifth count contains substantially the same allegations as are alleged in the second with the exception that the negligence is not charged as being wilful and wanton.

The first error assigned and argued is the refusal of the trial court to sustain the motion by defendants, made at the close of plaintiff's case, to exclude the evidence from the jury on the ground of variance in that the declaration charges, in substance, that the train ran into and collided with the automobile, while the proofs show that the automobile ran into and collided with the train. This point is very strenuously and extensively presented by counsel for defendants and many cases are cited upholding the general proposition that the proofs must correspond with the allegations, but we fail to comprehend how this ancient and well-settled rule can have any application to the allegations and proofs in this case. In the first place, it is not charged in the declaration that the train ran into and collided with the automobile. The language used in the declaration is that "the said engine and train were brought into violent collision with the said automobile." The common definition of the word "collision," as generally understood, is a violent contact between two objects. All that the expression used in the declaration means is that the engine and train and automobile were brought into violent contact with each other, which allegation was fully sustained by the proofs. In the second place, the criticism is hypercritical and without merit.

The next contention is that the second count does not set out a cause of action for wilfulness. At the conclusion of all the evidence in the case the defendants made a motion to instruct the jury to disregard the second count for the reason that there was no evidence fairly tending to prove the allegations charging that the defendants operated said locomotive in a wilful or wanton manner, which was overruled. If it

be assumed that the sufficiency of this count can be raised and preserved by this motion, we cannot concede the correctness of the contention. It must be remembered that the tracks of the Chicago & Alton Railroad do not run through the city of Springfield, in the vicinity where the accident happened, on a private right of way of the railroad company, but are laid in the center of Third street, a public street in said city, and it is so charged in the count. It is also charged that both Allen and Third streets, and the territory surrounding the intersection of said streets, were closely built up and were in a thickly populated section of the city, and that said crossing was regularly used as a thoroughfare by a large number of travelers, both on foot and in vehicles; that no flagman was maintained at said intersection at the time of the accident, nor any signal device of any kind to warn persons of approaching trains, nor any sign to inform persons of the presence of the railroad tracks; that the view thereof was obstructed by certain buildings, poles and trees, so that persons traveling west on Allen street, towards the railroad tracks, were peculiarly and extraordinarily exposed to danger unless trains approaching thereon from the south were driven and operated with especial care and caution and at a low and moderate rate of speed, all of which facts were then and there well known to the defendants; that defendants, with a knowledge of such conditions, wilfully and wantonly ran, drove and operated said train at a high and dangerous rate of speed, to wit, at a speed of 40 miles an hour, while approaching said intersection, with intentional disregard of their duty and of the consequences to persons lawfully using the intersection of said Allen and Third streets, and with a willingness to inflict injury upon said user of said intersection. It is urged that because the count did not also charge that the bell was not rung, nor the whistle blown, or that the train was backing up, or other cir-

cumstances accumulated with the charge of speed, it is faulty for the reason that excessive speed alone is not evidence of wilfulness. We concede that under some circumstances excessive speed alone would not be evidence of wilfulness, but under the facts as presented by this count of the declaration, we are of the opinion that a good cause of action is stated and if the facts, as therein alleged, were proven the jury would be justified in returning a verdict for the plaintiff. There was evidence in this case tending to support all the facts set out in the declaration, and the question was one of fact for the jury.

It is also contended by counsel for defendants that the proximate cause of the death of plaintiff's intestate was his own negligence, amounting to constructive wilfulness, in approaching a crossing familiar to him, where the view was obstructed, driving in the nighttime, with the windshield misted by rain, in a closed car, engaged in conversation with two other boys on the front seat, at a speed in violation of two statutes enacted for the safety of the public. One of the statutes referred to is chapter 121, wherein section 145b provides, that on approaching any highway crossing of a railroad at grade, the person controlling the movement of any self-propelled vehicle shall reduce the speed of said vehicle to a rate of speed not to exceed 10 miles per hour, Cahill's St. ch. 121, ¶ 161; the other is chapter 95a, wherein section 22 provides that no person shall drive a vehicle upon any public highway at a speed greater than is reasonable and proper, having regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person, Cahill's St. ch. 95a, ¶ 23.

The facts leading up to the accident show that Theodore E. Taylor, the deceased, at the time of his death, was 16 years of age, in his junior year at high school, and an exceptionally bright and intelligent boy, of good habits, active and strong. At about 7:30

o'clock on the evening of April 17, 1926, the deceased took his father's automobile, at his home in the city of Springfield, and proceeded to the home of William Metier, Jr., who lived on South Grand avenue between Fifth and Sixth streets, where Metier got into the automobile with him. The two boys then proceeded to the home of Hugh Graham, at the corner of Seventh and Allen streets, where Graham also got into the automobile, and the three boys, sitting in the front seat, then started for the high school to attend a dance that was to be given there that night. The three boys were classmates and friends, and the deceased frequently picked them up in his automobile and took them to the high school with him. After leaving Graham's home they proceeded west on Allen street towards the home of another boy by the name of Freeman Butts, for the purpose of taking him also to the high school. The automobile stopped at Sixth street for the boulevard, then proceeded past Fifth and Fourth streets and approached Third street. On the southeast corner of Third and Allen streets is a one-story double-front grocery and market known as the Piggly-Wiggly. The evidence tends to show that approaching Third street on Allen street, going west, the wall of this store obstructs the view of Third street towards the south. In Third street, four and one-half feet west of the store and thirteen and one-half feet north of the line of the store, was a flagman's shanty, eight feet square, and all but two feet of it was out on Third street. There were also telegraph poles and trees for two blocks along that side of the street east of the railroad tracks and also the garages and barns of the people who lived on Fourth street. On the west side of Third street is a sidewalk and that side is built up with residences and the same condition substantially exists on both the east and west sides of Third street, north of Allen street. There was no warning post or signal device of any kind at the intersection of

Third and Allen streets and no flagman was on duty between the hours of 6:00 p. m., and 7:00 a. m. The night in question, while not cold enough to freeze, was chilly and a heavy mist prevailed. There is evidence tending to show that the deceased drove his automobile along Third street at a rate of speed between 15 and 20 miles an hour until it neared the Third street crossing. Metier, who sat between the deceased and Graham, testified that as the former neared the crossing he slowed down and shifted the gears into second speed and as the automobile approached the railroad tracks, in the center of Third street, it seemed to him that it was just ''oozing along, hardly going.'' This witness, when he testified before the coroner's jury, stated that in his judgment the automobile was going 12 to 15 miles an hour just before it ran into the train, and testified on the trial that after thinking the matter over since the inquest, he remembered distinctly that the deceased shifted into second speed because the shift lever struck his knee when the shift was made, and that the automobile was, in fact, going very slowly. The credibility of his testimony was for the jury to determine. Graham, who sat on the far side of the seat in the automobile, did not remember whether the gears were shifted or not, nor at just what speed the automobile was going when it attempted to cross Third street. Metier's testimony is corroborated by the testimony of the witness Carberry, who was an automobile mechanic and arrived at the scene of the accident just as the last coach of the train was going past the intersection. He looked at the automobile and found that the gear was in second speed. The witness Gorman, who was with Carberry at the time, also corroborates him in the fact that the gear was in second speed. The witness, James Brown, testified that he was at the southeast corner of Third and Allen streets when the accident occurred; that when the automobile passed him it was running at a speed of

between 8 and 10 miles an hour and this was when the automobile was within 20 feet of the railroad tracks. The witness, Roy Wanless, was sitting in a Ford car in front of the Piggly Wiggly store, and testified that he saw the automobile which the deceased was driving, going west on Allen street at a speed of between 10 and 12 miles an hour and as it approached the railroad tracks it looked as if the deceased stooped over a little like he was going to shift gears and that the automobile then slowed down to about 5 miles an hour. Other witnesses testified as to the speed of the automobile at different points on Allen street, their estimates varying between 10 and 20 miles an hour, but there is no evidence to contradict the proof that as the automobile proceeded to cross the tracks its speed was between 5 and 10 miles per hour. Under this state of the record this court cannot find, as a matter of fact, that the deceased, at the time of the accident, was violating either of the statutes above mentioned, and was thereby guilty of either contributory negligence or wilfulness, but these were questions properly left to the jury to determine.

The train was known as the Lincoln Limited due to arrive at Springfield at 5:45 p. m., and was two hours and five minutes behind time. Six witnesses estimated the speed of the train at between 40 and 55 miles per hour and two placed it at between 35 and 40 miles per hour. One placed it at between 30 and 40 miles per hour. Defendants offered no evidence whatever in regard to the speed of the train. There is a conflict in the evidence as to whether any bell or whistle was sounded. Some of the witnesses who were very close to the crossing testified that they heard no bell or whistle, some witnesses, who were some distance from the crossing, stated that they heard a whistle of a train somewhere, and others testified that they heard both the bell and whistle. There is also a sharp conflict in the evidence as to how far a train

could be seen approaching the crossing on account of the buildings and other obstructions in close proximity thereto.

No contention is made in defendants' brief and argument that there was any error in the admission or exclusion of evidence, in the giving or refusal to give instructions, or that the verdict was excessive. The court gave 21 instructions on behalf of the defendants, which apparently covered every phase of the law applicable to the case. We have considered herein all the points raised by counsel for the defendants, except possibly the theory advanced by them that the deceased was guilty of constructive wilfulness, but whatever merit this proposition may have, we are of the opinion there are no facts in the record in this case on which to base it.

In our opinion the record in this case presents only questions of fact for the jury to determine and as there is evidence tending to support both the charge of negligence and of wilfulness and the verdict is not against the manifest weight thereof, the judgment will be affirmed.

*Affirmed.*